48

United States District Court
Southern District of Texas
FILED

OCT 0 9 2001

Michael N. Milby
Clerk of Court

IN THE UNITED STATES DISTRICT COURT

FOR THE SOUTHERN DISTRICT OF TEXAS

BROWNSVILLE DIVISION

| | | |
|---|---|---|
| HERMENEGILDO PATLAN | § | |
| | § | **COPY** |
| VS. | § | |
| | § | |
| UNITED STATES OF AMERICA, | § | |
| REALITY HOUSE COMMUNITY | § | CIVIL ACTION NO. 00-MC-41 |
| CORRECTIONS CENTER, JOE GARCIA, | § | |
| MANUEL GAONA, JUAN CARLOS CRUZ | § | |
| BROWNSVILLE POLICE DEPARTMENT | § | |
| X-UNKNOWN OFFICERS, MARIA | § | |
| HORTENCIA MANCHA | § | |

### DEFENDANTS JOE GARCIA, MANUEL GAONA, JUAN CARLOS CRUZ, MARIA HORTENCIA MANCHA AND REALITY HOUSE COMMUNITY CORRECTIONS CENTER'S MOTION FOR SUMMARY JUDGMENT

Come now REALITY HOUSE COMMUNITY CORRECTIONS CENTER, JOE GARCIA, MANUEL GAONA, JUAN CARLOS CRUZ, and MARIA H. MANCHA, Defendants herein, and file this, their Motion for Summary Judgment. In support thereof, Defendants respectfully shows the Court the following:

I.   BACKGROUND FACTS.................................... 2
II.  PLAINTIFF'S CLAIMS................................... 3
III. STATEMENT OF MATERIAL FACTS......................... 4
IV.  LEGAL STANDARDS..................................... 8
     A. SUMMARY JUDGMENT STANDARD ......................... 8
     B. 42 U.S.C. § 1983 ................................. 10
V.   ANALYSIS........................................... 12
     A. LOSS OF GOOD TIME CREDITS MUST BE ADDRESSED IN A HABEAS
        CORPUS PROCEEDING OR ON DIRECT APPEAL ............ 12
     B. NO PROPERTY RIGHT TO INCARCERATION IN A PARTICULAR PRISON ........ 14

1

    C. PLAINTIFF WAS AFFORDED PROCEDURAL DUE PROCESS.................15
    D. REALITY HOUSE COMMUNITY CORRECTIONS CENTER AND FORMER
       DIRECTOR JOSE S. GARCIA: SUPERVISORY LIABILITY? ...............17
    E. JURAL EXISTENCE .........................................18
    F. SUPERVISORY LIABILITY....................................18
    G. DEFENDANT MANUEL GAONA...................................21
    H. DEFENDANT JUAN CARLOS CRUZ ..............................21
    I. DEFENDANT MARIA HORTENCIA MANCHA ........................23
  VI.  CONCLUSION......................................... 24

## I.  BACKGROUND FACTS

The genesis of this suit is Plaintiff's Complaint filed on November 21, 2000. Plaintiff's claims are asserted pursuant to 42 U.S.C. § 1983, the Fourth, Fifth, and Fourteenth Amendments to the United States Constitution.[1]

On May 28, 2000, Plaintiff was an inmate of the Reality House Community Corrections Center (hereinafter "the Center"), a contract facility of the Federal Bureau of Prisons. He was released to attend church at 11:00 a.m. with a designated return time of 1:00 p.m. Mr. Patlan did not return until approximately 8:15 p.m. in an intoxicated and agitated state. When Mr. Patlan was queried about his tardiness and intoxication, he admitted he had nine beers and "some troubles" with his girlfriend. He was asked to take a breathalyzer test, whereupon he grabbed and broke the equipment. Due to his belligerent behavior toward staff members, the Brownville Police Department was called. The

---

[1] Plaintiff also alleges State causes of action such as false arrest, false imprisonment, and defamation. However, those claims are apparently directed at Defendant Brownville Police Department and "X-Unknown Officers" of the Brownsville Police Department.

responding Brownville police officer called for backup, and several officers arrived. Ultimately, the officers had to use pepper spray in order to subdue Plaintiff. Plaintiff was then taken to a local jail to be held for charges of disorderly conduct and resisting arrest.

Subsequently, Mr. Patlan received a disciplinary hearing, which resulted in the disallowance of 13 days good conduct time and transferred to a secure facility of the Federal Bureau of Prisons.

Plaintiff claims he is entitled to one million dollars from the Center and fifty thousand dollars from each of the Defendants. Plaintiff's Complaint at p.7, sec. D.

## II. PLAINTIFF'S CLAIMS

Plaintiff claims that Defendant Garcia was the director of the facility and allowed "everything to go on, not caring if [Plaintiff] got a fair hearing." He also alleges Mr. Garcia was involved in an unspecified conspiracy. Plaintiff's Complaint at p.7, sec. D.

Plaintiff claims that Defendant Mancha, as assistant director of the facility, joined in the unspecified conspiracy and assisted in filling out a false disciplinary report. Plaintiff's Complaint at p.7, sec. D.

Plaintiff claims that Defendant Manuel Gaona, as Case Manager, joined in the unspecified conspiracy and filed a false report. Plaintiff's Complaint at p.7, sec. D.

Plaintiff claims that Defendant Cruz, as a staff member, made a false report concerning the incident in order to "cover up his actions." Plaintiff's Complaint at p.7, sec. D.

Plaintiff's claim against Defendant Reality House Community Correction Center is that it is responsible for the actions of its staff and their training. Plaintiff's Complaint at p.7, sec. D.

## III. STATEMENT OF MATERIAL FACTS

1. Plaintiff was an inmate of the Center and the Federal Bureau of Prisons on May 28, 2000, and is an inmate of the Three Rivers Federal Correctional Institute now. Plaintiff's Complaint at 1; id. at 6.

2. Plaintiff received permission to leave the Center at 11:00 a.m. with a scheduled return time of 1:00 p.m. He signed out at 11:00 a.m. Exhibit A (Records Declaration, sign-out sheet); Exhibit D (Cruz Declaration).

3. Plaintiff did not return at 1:00 p.m. Exhibit A (Records Declaration, sign-out sheet); Exhibit D (Cruz Declaration).

4

4.   Plaintiff called a staff member of Reality House Community Corrections Center and stated he would return late because he was having problems with his girlfriend. Exhibit D (Cruz Declaration); Exhibit A (Records Declaration, May 28, 2000 Incident Report).  He was told to return to the facility. Id. He did not have permission to stay out of the facility. Id.

5.   Plaintiff did not return to the facility until 8:15 p.m.  Id.

6.   Plaintiff was intoxicated and belligerent upon his return.  Id.

7.   Plaintiff grabbed the Center's breathalyzer equipment and threw it to the ground, breaking it. Plaintiff's Complaint at 5-6 (Community Corrections Escape Report Form written by Benjamin R. Touley); Exhibit D (Cruz Declaration).

8.   The Brownville Police Department was called and responded.  Upon arriving, the Brownville officer had to call for backup in light of the violent behavior of Plaintiff. Id.

9.   Plaintiff was arrested for disorderly conduct and resisting arrest and taken to a local jail. Id.

10.  Staff of Reality House Community Corrections Center prepared an escapee checklist, incident report (on a form provided by the Federal Bureau of Prisons), and Investigation

Report.  Exhibit A  (Records Declaration, attached records); Exhibit C (Gaona Declaration).

11.  In the Investigation, Defendant Gaona advised Plaintiff of his right to remain silent. Exhibit A (Records Declaration, Investigation Report); Exhibit C (Gaona Declaration). Plaintiff told Defendant Gaona that he had nine beers, got confused and "lost his mind." Id. Plaintiff did not remember breaking the breathalyzer equipment. Id.

13.  On May 30, 2000, Plaintiff was served a copy of the Federal Bureau of Prisons "Notice of Center Discipline Committee Hearing." Exhibit A (Records Declaration, Notice of Hearing); Exhibit C (Gaona Declaration). Plaintiff signed the Notice, indicating his receipt. Id.

14.  The Disciplinary Hearing was held on June 1, 2000, at 9:30 a.m. Exhibit B (Mancha Declaration); Exhibit A (Records Declaration, Center Discipline Committee Report). Plaintiff gave a statement at the hearing. Id. He admitted he had a fight with his girlfriend and got drunk. Id. He admitted that he lost control due to the alcohol. Id. He did not request any witnesses, documents, or a staff representative. Id.

15.  The Disciplinary Committee concluded that Plaintiff did not return as scheduled, recommended that he be returned

6

to close custody, and recommend that he lose 50% of his good time. Id.

16. Plaintiff was advised of his right to appeal the Disciplinary Committee's findings and recommendations. Id. He initialed that portion of the form. Id.

17. On June 27, 2000, Community Corrections Manager Benjamin Tousely (who is not a defendant in this suit) affirmed the decision, disallowed thirteen days good time, and directed that Plaintiff be transferred to a secure facility. Id.

18. The Reality House Community Corrections Center is not a corporation, has no legal existence, and has not been granted any authority to sue or be sued. Exhibit B (Mancha Declaration).

19. Defendant Jose S. Garcia was the Director of the Center at the time of the incident; however, he was not at work when Plaintiff arrived late, was not at work the following day, and had nothing to do with the Plaintiff's disciplinary hearing. Exhibit E (Garcia Declaration). Plaintiff never contacted Mr. Garcia about the matter. Id.

## IV.  LEGAL STANDARDS

Defendants respectfully assert that the following standards of review are relevant to this motion for summary judgment and the substantive claims analyzed herein.

### a.  SUMMARY JUDGMENT STANDARD

Rule 56(c) of the Federal Rules of Civil Procedure provides that the Court may only grant a motion for summary judgment when there is no genuine issue of material fact and the moving party is entitled to summary judgment as a matter of law. The party seeking summary judgment always bears the initial responsibility of informing the district court of the basis for its motion and identifying those portions of pleadings, depositions, answers to interrogatories, and admissions on file, together with the Declarations, if any, which it believes demonstrates the absence of a genuine issue of material fact. Celotex Corp. v. Catrett, 477 U.S. 317, 325 (1986).

Once a properly supported motion for summary judgment is made, the adverse party must set forth specific facts showing that there is a genuine issue for trial. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 250, 106 S. Ct. 2505 (1986). In doing so, the nonmoving party may not rest upon the mere allegations or denials of its pleadings, and unsubstantiated

8

or conclusory assertions that a fact issue exists will not suffice. Tex Morris v. Covon World Wide Moving, 144 F.3d 377, 380 (5th Cir. 1998), citing Anderson, 477 U.S. at 256. Rather, the nonmoving party must set forth specific facts showing the existence of a "genuine" issue concerning every essential component of its case. Thomas v. Price, 975 F.2d 231, 235 (5th Cir. 1992). That is, the nonmoving party must adduce evidence sufficient to support a jury verdict. Id., citing Anderson, 477 U.S. at 248).

The substantive law will identify what facts are material. Id. at 248. While fact questions are considered with deference to the nonmovant, Reid v. State Farm Mutual Auto. Ins. Co., 784 F.2d 577, 578 (5th Cir. 1986), a dispute as to a material fact is "genuine" only if the evidence is such that a reasonable jury could return a verdict for the nonmoving party, Anderson, 477 U.S. at 248. The Court does not, in the absence of any proof, assume that the nonmoving party could or would prove the necessary facts. Little v. Liquid Air Corp, 37 F.3d 1069, 1075 (5th Cir. 1994) (en banc).

"It goes without saying that such conclusory, unsupported assertions are insufficient to defeat a motion for summary judgment." Marshall v. East Carroll Parish Hospital Services District, 134 F.3d 319, 324 (5th Cir. 1998); Clark v. America's

9

Favorite Chicken Co., 110 F.3d 295, 297 (5th Cir.1997); Duffy
v. Leading Edge Products, Inc., 44 F.3d 308, 312 (5th Cir.1995);
Krim v. BancTexas Group, Inc., 989 F.2d 1435, 1449 (5th
Cir.1993); Elliott v. Perez, 751 F.2d 1472, 1479 & n. 20 (5th
Cir. 1985).

### b. 42 U.S.C. § 1983

Section 1983 provides injured plaintiffs with a cause of
action when they have been deprived of federal rights under
color of state law. The statute states:

> Every person who, under color of any statute,
> ordinance, regulation, custom, or usage, of any State
> or Territory or the District of Columbia, subjects or
> causes to be subjected, any citizen of the United
> States or other person within the jurisdiction thereof
> to the deprivation of any rights, privileges, or
> immunities secured by the Constitution and laws, shall
> be liable to the party injured in an action at law,
> suit in equity, or other proper proceeding for
> redress.…

42 U.S.C. § 1983. In order to state a valid claim under section
1983, Plaintiff must "(1) allege a violation of rights secured
by the Constitution or laws of the United States and (2)
demonstrate that the alleged deprivation was committed by a
person [or entity] acting under color of state law." Leffall v.
Dallas Indep. Sch. Dist., 28 F.3d 521, 525 (5th Cir. 1994),
citing West v. Atkins, 487 U.S. 42, 48, 108 S. Ct. 2250 (1988).

10

Plaintiff claims that his due process rights were violated. Due process requires that an individual be accorded notice and the opportunity to rebut the charges against him before incurring deprivation of a protected interest. See, e.g., Mullane v. Hanover Trust Company, 339 U.S. 306, 313, 70 S. Ct. 652, 657, 94 L. Ed. 865 (1950). But, "the standards of due process are not wooden absolutes," Ferguson v. Thomas, 430 F.2d 852, 856 (5th Cir.1970), for constitutional dictates provide only general minimum standards for state procedures, see id. at 858. The minimum federal constitutional requirement is only that the party deprived of a property right have "'an opportunity [for a hearing]…granted at a meaningful time and in a meaningful manner,' for [a] hearing appropriate to the nature of the case," as well as "a meaningful opportunity to be heard." Boddie v. Connecticut, 401 U.S. 371, 378-79, 91 S. Ct. 780, 786-87, 28 L. Ed. 2d 113 (1971) (citations omitted). Accordingly, in reviewing a disciplinary hearing for its alleged federal due process deficiencies, the Court's task is not to review every evidentiary ruling as if it was deciding the issues presented at the hearing, but rather is limited to determining whether the Plaintiff's due process right to have the opportunity to rebut the charges against him was offended because he could not fully develop his defenses to the charged violations.

## V.   ANALYSIS

The individual defendants offer the following analysis and application of the relevant legal standards with regard to their entitlement to summary Judgment.

### a. LOSS OF GOOD TIME CREDITS MUST BE ADDRESSED IN A HABEAS CORPUS PROCEEDING OR ON DIRECT APPEAL

Plaintiff apparently claims that his due process rights were violated when, inter alia, he lost good time credits. As a result of the recommendation from the Discipline Committee thirteen days' good time was forfeited and he was transferred to another facility. Plaintiff's claims should be dismissed.

Loss of good time credits can effect the duration of confinement, and such claims are properly brought in a habeas corpus petition. Wolff v. McDonnell, 418 U.S. 539, 563, 94 S. Ct. 2963, 41 L. Ed. 2d 935 (1974). In Heck v. Humphrey, 512 U.S. 477, 129 L. Ed. 2d 383, 114 S. Ct. 2364 (1994), the Supreme Court held that when a prisoner seeks damages in a suit filed pursuant to sec. 1983, "the district court must consider whether a judgment in favor of the plaintiff would necessarily imply the invalidity of his conviction and sentence; if it would, the complaint must be dismissed unless the plaintiff can demonstrate that the conviction or sentence has already been invalidated." Heck, 512 U.S. at 487. In subsequent decisions, Heck has been

12

applied to judgments in prison discipline proceedings. Edwards
v. Balisok, 520 U.S. 641, 648, 137 L. Ed. 2d 906, 117 S. Ct.
1584 (1997). In Balisok, the Court concluded that a plaintiff
prisoner's due process challenge to a disciplinary proceeding
necessarily implied the invalidity of the sanction imposed at
that proceeding (the forfeiture of good time credits). The Court
held that the plaintiff prisoner's claims for declaratory relief
and money damages were not cognizable under § 1983.

When "a judgment in favor of the plaintiff would
necessarily imply the invalidity of his…sentence," a prisoner's
sec. 1983 claim for damages that challenges the disciplinary
procedures which deprived him of good time credits must be
dismissed "unless the prisoner can demonstrate that the…sentence
has been previously invalidated." Edwards, 520 U.S. at 643,
quoting Heck, 512 U.S. at 486-87. A sec. 1983 plaintiff may show
that a sentence was invalidated by establishing that: (1) it was
reversed on direct appeal; (2) it was adjudged invalid by a
state tribunal; or (3) it was "called into question by a federal
court's issuance of a writ of habeas corpus." Heck, 512 U.S. at
487. Plaintiff has made no such showing.

As reflected in the Complaint, Plaintiff is no longer in
the custody of any Defendant, but is in the custody of the Three
Rivers Federal Correctional Institute. The decision to disallow

13

good time was made by Benjamin Tousely, the Community Corrections Manager, of Houston, Texas. Habeas Corpus relief can only be directed at a person or entity having the Plaintiff in custody. Defendants do not have Plaintiff in custody, and therefore cannot release him or alter his sentence.

There are no genuine issues of material fact regarding Plaintiff's apparent claim that his good time credits should be restored and Defendants are powerless to change his sentence. This claim must be brought in a habeas corpus proceeding. Defendants are therefore entitled to judgment as a matter of law with regard to this claim.

### b. No Property Right to Incarceration in a Particular Prison

Plaintiff also apparently claims that his due process rights were violated when he was transferred to another facility. Plaintiff does not dispute that he is, and was, a federal prisoner.

As stated above, in order to state a valid claim under section 1983, Plaintiff must "(1) allege a violation of rights secured by the Constitution or laws of the United States and (2) demonstrate that the alleged deprivation was committed by a person [or entity] acting under color of state law." Leffall v. Dallas Indep. Sch. Dist., 28 F.3d 521, 525 (5th Cir. 1994), citing West v. Atkins, 487 U.S. 42, 48, 108 S. Ct. 2250 (1988).

14

.

The Supreme Court has stated that the Due Process Clause does not protect every change in the conditions of confinement. See Sandin v. Conner, 515 U.S. 472, 478, 132 L. Ed. 2d 418, 115 S. Ct. 2293 (1995), citing Meachum v. Fano, 427 U.S. 215, 49 L. Ed. 2d 451, 96 S. Ct. 2532 (1976). A prisoner has no inherent constitutional right to any particular classification or custody level, Wilson v. Budney, 976 F.2d 957, 958 (5th Cir. 1992), nor a constitutional or statutory right to incarceration is a specific prison, Olim v. Wakinekona, 461 U.S. 238, 245-46, 103 S.Ct. 1741, 1745-46 (1983); 18 U.S.C. sec. 4082.

Plaintiff does not have a constitutional or statutory right to incarceration in a specific facility. To the extent to which Plaintiff contends that his rights were violated when he was transferred to another facility, there are no genuine issues of material fact and Defendants are entitled to judgment as a matter of law.

### c. PLAINTIFF WAS AFFORDED PROCEDURAL DUE PROCESS

Plaintiff was afforded all of the due process required by the Constitution in his disciplinary hearing.

In the context of a prison disciplinary hearing, due process requires that an inmate be provided: (1) at least twenty-four-hour advance written notice of the disciplinary charges; (2) an opportunity to call witnesses and present

15

documentary evidence when the presentation is not unduly hazardous to institutional safety or correctional goals; and (3) a written statement by the fact finder of the evidence relied upon and the reason for the disciplinary action. Wolff v. McDonnell, 418 U.S. 539, 563, 94 S. Ct. 2963, 41 L. Ed. 2d 935 (1974); Banuelos v. McFarland, 41 F.3d 232, 234 (5th Cir. 1995). Further, if some of the procedural safeguards are overlooked, the petitioner must show resulting prejudice to establish a constitutional violation. Black v. Warren, 134 F.3d 732, 734 (5th Cir. 1998), citing Jackson v. Cain, 864 F.2d 1235, 1251-52 (5th Cir. 1989)).

The documentary evidence attached hereto, as well as the Declarations of Defendants, establish that Plaintiff was given notice of the disciplinary hearing on May 30, 2000, and that the hearing was held on June 1, 2000. Plaintiff received more than twenty-four hours' notice of the hearing.

The documentary evidence attached hereto, as well as the Declarations of Defendants, establish that Plaintiff was given the opportunity to call witnesses and present documentary evidence, but he did not request any witnesses nor present any documentary evidence.

The documentary evidence attached hereto, as well as the Declarations of Defendants, establish that Plaintiff was given a

CUtePDF – www.fenito.com

written statement of the fact finder of the evidence relied upon and the reason for the disciplinary action.

Plaintiff admitted the disciplinary violation.

In the setting of prison disciplinary proceedings, due process requires only that there be "some evidence to support the findings." Hudson v. Johnson, 242 F.3d 534, 536 (5th Cir. 2001); Smith v. Rabalais, 659 F.2d 539, 545 (5th Cir. 1981) (stating courts must determine "whether any evidence at all supports the action taken by prison officials."). The evidence in the form of Mr. Cruz's report, Mr. Gaona's investigative report (reporting Plaintiff's admissions), along with Plaintiff's admissions in the hearing certainly constitute some evidence of the disciplinary violation.

In light of the foregoing, there are no genuine issues of material fact regarding Plaintiff's right to procedural due process, and Defendants are entitled to judgment as a matter of law.

### d. REALITY HOUSE COMMUNITY CORRECTIONS CENTER AND FORMER DIRECTOR JOSE S. GARCIA: SUPERVISORY LIABILITY?

Defendant Reality House Community Correction Center does not have a jural existence, and is therefore entitled to summary judgment. Even if the Reality House Community Corrections Center had a jural existence, Plaintiff asserts no claims

17

CutePDF - www.tesisa.com

against the Center that are cognizable under 42 U.S.C. sec. 1983 or any other cause of action alleged. Similarly, Plaintiff's claims against Defendant Jose S. Cruz are based entirely on a theory of supervisory liability.

### e. JURAL EXISTENCE

Reality House Community Corrections Center is not a legal entity and does not have a jural existence.

Jural existence is measured in terms of an entity's capacity to sue and be sued. This issue was before the Fifth Circuit in Darby v. Pasadena Police Department, 939 F.2d 311 (5th Cir. 1991).

As stated in the Declaration of Defendant Maria Hortencia Mancha—the current Director—the center is merely a location of Reality House, Inc., a subsidiary of Correctional Systems, Inc. Reality House Community Corrections Center is not a corporate entity, does not have authority or capacity to sue or be sued, and has no legal existence.

In light of the foregoing facts, there are no genuine issues of material fact and Defendant Reality House Community Correction Center is entitled to judgment as a matter of law.

### f. SUPERVISORY LIABILITY

There are no allegations or proof of wrong-doing on the part of Defendant Reality House Community Correction Center or

18

Defendant Jose S. Garcia.  As stated above, the only allegation against Defendant Reality House Community Corrections Center is that "it is responsible for the actions of its staff and their training." Plaintiff's Complaint at p.7, sec. D.  Defendant Jose S. Garcia is alleged to have allowed "everything to go on, not caring if [Plaintiff] got a fair hearing."  He also alleges Mr. Patlan was involved in an unspecified conspiracy. Plaintiff's Complaint at p.7, sec. D.

The law is clearly established that the doctrine of respondent superior does not apply to § 1983 actions. Monell v. New York City Dep't of Soc. Servs., 436 U.S. 658, 691, 56 L. Ed. 2d 611, 98 S. Ct. 2018 (1978); Williams v. Luna, 909 F.2d 121, 123 (5th Cir. 1990). Rather, the misconduct of a subordinate must be affirmatively linked to the action or inaction of the supervisor. Southard v. Texas Bd. of Crim. Justice, 114 F.3d 539, 550 (5th Cir. 1997). A supervisor may be liable under §1983 if he, by action or inaction, demonstrates deliberate indifference to a plaintiff's constitutionally protected rights. Id. at 551. "'Deliberate indifference' is a stringent standard of fault, requiring proof that a municipal actor disregarded a known or obvious consequence of his action," Board of Comm'rs of Bryan Cty. v. Brown, 520 U.S. 397, 410, 137 L. Ed. 2d 626, 117 S. Ct. 1382 (1997), in other words, that he knew what was

happening and just did not care.  Simply alleging that an official was responsible for the acts of all the officials below is insufficient. <u>Woods v. Edwards</u>, 51 F.3d 577, 583 (5th Cir. 1995).  Rather, a plaintiff must identify defendants who were either personally involved in the constitutional violation or whose acts are causally connected to the constitutional violation alleged. <u>See also Thompkins v. Belt</u>, 828 F.2d 298, 303-04 (5th Cir. 1987).

Plaintiff's claim against the Center are entirely based on alleged "responsibility" for actions of staff with no allegations of individual wrong-doing on the part of the Center. This does not constitute a claim under 42 U.S.C. sec. 1983. Similarly, Plaintiff's claim against Mr. Garcia is that he "allowed" unspecified matters to take place.  Mr. Garcia's Declaration establishes that he was not present at the time of the incident and had nothing to do with the disciplinary hearing.  His actions cannot be construed to be a "conspiracy."[2]

There are no genuine issues of material fact regarding Plaintiff's claims against these Defendants, and they are entitled to judgment as a matter of law.

---

[2] Plaintiff's allegations of "conspiracy are entirely conclusory and present nothing for the Court to decide. <u>Clark v. America's Favorite Chicken Co.</u>, 110 F.3d 295, 297 (5th Cir. 1997) ("Unsupported allegations…or deposition testimony setting forth ultimate or conclusory facts and conclusions of law are insufficient to defeat a motion for summary judgment.").

### g. DEFENDANT MANUEL GAONA

Plaintiff claims that Defendant Manuel Gaona, as case manager, joined in the unspecified conspiracy and filed a false report. Plaintiff's Complaint at p.7, sec. D.

The only report Mr. Gaona prepared is his Investigation Report—a one page document in which he detailed Plaintiff's statement and attitude and Mr. Gaona's comments and conclusions. Further, Mr. Gaona states in his Declaration that the report is correct and accurately reports Plaintiff's statements.

Plaintiff's assertion that his own comments, as reported by Mr. Gaona, are "false" is entirely conclusory and self-serving. Unsupported allegations setting forth ultimate or conclusory facts and conclusions of law are insufficient to defeat a motion for summary judgment. Clark v. America's Favorite Chicken Co., 110 F.3d 295, 297 (5th Cir. 1997). That a report of his own statements is "false" is utterly frivolous, and presents nothing for the Court to decide.

There are no genuine issues of material fact and Mr. Gaona is entitled to judgment as a matter of law.

### h. DEFENDANT JUAN CARLOS CRUZ

Plaintiff claims that Defendant Cruz, as a staff member, made a false report concerning the incident in order to "cover

21

up his actions." Plaintiff's Complaint at p.7, sec. D.  He fails
to specify what action Mr. Cruz allegedly covered-up.

Mr. Cruz's sole relevant participation was the preparation
and delivery of an Incident Report.  Mr. Cruz's report simply
indicates that on May 28, 2000, Plaintiff checked out of the
facility at 11:00 a.m. to attend church, he was to return at
1:00 p.m., he called and said he was running late, he did not
return until 8:15 p.m., and he had no permission or excuse to be
7 hours and 15 minutes late. Program Monitor Adrian Sanchez made
a similar, but more detailed report.  Her report was prepared at
7:10 p.m. The report was amended to indicate that Plaintiff
returned at 8:15 p.m.  Mr. Cruz gave Plaintiff a copy at 8:17
p.m.  Mr. Cruz's report was completed at 9:05 p.m.

Mr. Cruz did not attend nor participate in the Disciplinary
Hearing.

Plaintiff identifies nothing in Mr. Cruz's report that is
untrue, and it is indisputable that he returned to the Center
well after the time when he was due.  Mr. Cruz affirms that
everything in the report is true. Under the circumstances,
Plaintiff's claims are entirely conclusory. Unsupported
allegations setting forth ultimate or conclusory facts and
conclusions of law are insufficient to defeat a motion for

22

summary judgment. <u>Clark v. America's Favorite Chicken Co.</u>, 110
F.3d 295, 297 (5th Cir. 1997).

There are no genuine issues of material fact and this
Defendant is entitled to judgment as a matter of law.

### i. DEFENDANT MARIA HORTENCIA MANCHA

Plaintiff claims that Defendant Mancha, as assistant
director of the facility, joined in the unspecified conspiracy
and assisted in filling out a false disciplinary report.
<u>Plaintiff's Complaint</u> at p.7, sec. D.

Defendant Mancha was the Assistant Director of the Center
in May 2000, and served as Chairperson of the Discipline
Committee that heard the allegations against Plaintiff.   She
prepared the "Center Discipline Committee Report."

The report merely indicates that Plaintiff's hearing was
held on June 1, 2000 at 9:30 a.m.   Plaintiff was charged with
not returning to the Center as directed.   Plaintiff was present
at the hearing, as indicated by his initials on the form.
Plaintiff did not request any witnesses.   He was advised of his
rights by Mr. Gaona and by the form.   Plaintiff's statement at
the hearing was that he had a fight with his girlfriend and got
drunk, and that he knew he lost control due to the alcohol he
drank.

Ms. Mancha merely found that Plaintiff did not return to the facility until 8:15. She recommended forfeiture of 50% of his good time and transfer to close custody.

Plaintiff does not identify any portion of the disciplinary report that is false. It is indisputable that Plaintiff failed to return at the designated time and that his actions constituted a violation of the rules and regulations of the Center. His claims that Ms. Mancha filed a false report and was involved in a conspiracy are entirely conclusory. Unsupported allegations setting forth ultimate or conclusory facts and conclusions of law are insufficient to defeat a motion for summary judgment. <u>Clark v. America's Favorite Chicken Co.</u>, 110 F.3d 295, 297 (5th Cir. 1997).

## VI. <u>CONCLUSION</u>

There are several grounds for dismissal of Plaintiff's claims as a matter of law. Plaintiff's claims concern the duration of his confinement, and must be brought in a direct appeal or habeas corpus action before they can be analyzed under 42 U.S.C. sec. 1983. Even if the claims were properly asserted at this juncture, the summary judgment evidence establishes that plaintiff has no constitutional right to good time nor to be housed in a particular facility. The Reality House Community Corrections Center is not a legal entity and has no jural

24

existence.   Further, the claims against the Reality House and Mr. Garcia are based almost entirely on an invalid theory of supervisory liability.   The remaining claim (conspiracy) against Mr. Garcia is entirely conclusory, and is soundly defeated with Mr. Garcia's testimony that he had nothing to do with the hearing.

With regard to the remaining defendants, Plaintiffs' claims are just as conclusory.   He alleges that Ms. Mancha, Mr. Cruz., and Mr. Gaona engaged in an unspecified conspiracy and submitted false information, but he identifies the particulars of neither. It is indisputable that Plaintiff did not return at the appointed time, had no permission to be away from the facility, and arrived drunk and belligerent.   Under these circumstances, the disciplinary action was entirely justified, and Defendants are entitled to judgment as a matter of law.

WHEREFORE, PREMISES CONSIDERED, Defendants REALITY HOUSE COMMUNITY CORRECTIONS CENTER, JOE GARCIA, MANUEL GAONA, JUAN CARLOS CRUZ, and MARIA H. MANCHA pray that their Motion for Summary Judgment be **GRANTED**, that Plaintiff's claims against them be **DISMISSED WITH PREJUDICE**, and for such other and further relief, whether at law or in equity, to which Defendants have shown themselves justly entitled.

Respectfully submitted,

Robert S. Davis
Attorney-in-Charge
State Bar No. 05544200
Southern District: *Pro Hac Vice*

Flowers + Davis, P.L.L.C.
815 Rice Road
Tyler, Texas  75703
(903) 534-8063
(903) 534-1650 Facsimile


BY PERMISSION    _____

L. Charles Van Cleef
State Bar No. 00786305

FLOWERS, DAVIS & VAN CLEEF, P.L.L.C.
210 N. State Line Avenue, Suite 504
Texarkana, AR  71854
(870) 772-9247
(870) 772-6829  Facsimile

26

**CERTIFICATE OF SERVICE**

I hereby certify that the above and foregoing instrument was served upon all counsel of record and Plaintiff in the above entitled and numbered cause this the _____ day of October, 2001, via first class mail.

_____
L. Charles Van Cleef

27

## DECLARATION

My name is Manuel Gaona.  I am over 18 years of age, of sound mind, capable of making this Declaration, and have personal knowledge of the facts stated herein.

My name is Manuel Gaona.  I am over 18 years of age, of sound mind, capable of making this affidavit, and have personal knowledge of the facts stated herein.  The facts stated herein are true and correct

I am employed by the Reality House Community Corrections Center and was so employed during the period of time relevant to this lawsuit.  I am a custodian of records of the Reality House Community Corrections Center.

The records attached to this affidavit are kept by the Reality House Community Corrections Center in the regular course of its business.  It was in the regular course of business of the Reality house Community Corrections Center for an employee or representative of the Reality House Community Corrections Center, with knowledge of the act, condition, event, opinion, or diagnosis recorded to make these records or top transmit information thereof to be included in such records; and these records were made at or near the time of the incidents reported therein, or reasonably soon thereafter.  The records attached



hereto are the originals of such records or are exact duplicates
thereof.

    I declare, under penalty of perjury that the foregoing is
true and correct. Executed on October _____, 2001.

MANUEL GAONA

SEP-27-2001 THU 03:47 PM WILLETTE & GUERRA       FAX NO. 956 5411893       P. 04

REALITY HOUSE, INC. CLIENT SIGN IN - SIGN OUT SHEET (Curfew; Pink=3pm Yellow=7pm Blue=9pm)

NAME: PATLAN, HERMENEGILDO

REG. NO. 76880-079       LEGAL STATUS: B.O.P./ 3821E

HOME ADDRESS:  1802 LINDA ST.       SAN JUAN, TX.

HOME PHONE:  783-0248

ROOM #: 11       BED #: 3

EMPLOYER:

ADDRESS:

PHONE:

WORK HOURS:

CASH MANAGER: MANUEL GAONA       Approved for Sat Sun Wk:

WORK DAYS: S  M  T  W  TH  F  S

| Date Out '00 | Time Out | Destination & Purpose | Date In '00 | Time Due | Resident Signature | Staff Initials | Sign In | Time In | Resident Signature | Staff Initials | Comments |
|---|---|---|---|---|---|---|---|---|---|---|---|
| 5/2 | 9:15 AM | Job search | 5/2 | 5:30 PM | | | | | | | |
| 5/3 | 8:07 AM | Job search | 5/3 | 5:30 PM | | | | | | | |
| 5/4 | | Job search | 5/4 | | | | | | | | |
| 5/5 | | | 5/5 | | | | | | | | |
| 5/6 | | | 5/6 | | | | | | | | |
| | | | 5/7 | | | | | | | | |
| | | | | | | | | | | | |
| | | Job search | | | | | | | | | |
| | | | | | | | | | | | |
| | | | | | | | | | | | |
| | | Job search | | | | | | | | | |
| | | | | | | | | | | | |
| | | Test jes | 5/27 | | | | | | | | |
| | | | 5/28 | 10:00 PM | | | | | | | Job interview at 9am - 12 noon |
| | | Church | 5/28 | | | | | | | | |

LEGEND: (1) C.J.'s Grocery Store, 401 E. Jefferson (541-7967)   (3) HEB Grocery Store, 924 E. Elizabeth (542-7161)   (5) Majestic Market/McDonald, 1700 E. Elizabeth (542-3768)   (7) MH/IMM/INS Tropical Center/8 Boca Chica Blvd   (4) Amgdmd Mkt, 301 Mexico St. (948-3708)   (6) Pay Phone, 354 E. Elizabeth (542-2916)   (7) Majestic Market/McDonald

EXHIBIT  Blumberg No. 5118

TOTAL P.09



# REALITY HOUSE INC.
## Correctional Systems Inc.

405 E. Washington • Brownsville, Texas 78520
Phone: (956) 541-2771 • Fax (956) 542-0921

## Escape Checklist

THIS CHECKLIST SHOULD BE COMPLETED FRO ALL ESCAPES AND FAXED (1-713-718-7480) TO THE CCM, PRIOR TO CALLING OR PAGING THE CCM ABOUT THE ESCAPE.

Inmate Name: _Hermenegildo , Patlan_

Inmate Register Number: _76880-079_

Pass Site Address: _CHorCH_
or Emergency Contact Address.

Pass Site Phone Number: _N/A_
Or Emergency Contact Phone Number.

Name of Family Member / Relative at Pass Site: _N/A_

Employer and Address: _N/A_

Employment Supervisor & Phone Number: _N/A_

Time and Date of Most Recent Contact (telephone or in-person): _5-28-00   1:35 pm_

Time and Date of Departure from Facility (if on pass or at work): _5-28-00   11:00 am_

Time and Date of Scheduled Return Time (if on pass or at work): _5-28-00   1:00 pm_

Pass Location (if different from residence or work site): _YES ,_

Printed Name of Staff Completing Checklist: _Adriana Sanchez_

Signature of Staff Completing Checklist: _A. Sanchez_

Date Checklist Completed: _05-28-00_



EXHIBIT

BP-S205 INCIDENT REPORT (CCC's) CD FRM
MAR 94

## U. S. DEPARTMENT OF JUSTICE                    FEDERAL BUREAU OF PRISONS

### PART I - INCIDENT

1. Name of Center
Reality House, Inc. 405 E. Washington St., Brownsville, Texas 78520

| 2. Name of Inmate HERMENEGILDO, PATLAN | 3. Register Number 76880-079 | 4. Date of Incident 5/28/00 | 5. Time 1:00 P.M |
|---|---|---|---|

| 6. Place of Incident CHURCH | 7. Assignment | 8. Quarters |
|---|---|---|

| 9. Incident ESCAPE ,BEING IN AN UNAUTHORIZED AREA | 10. Code  200,316 |
|---|---|

11. DESCRIPTION OF INCIDENT *(Date and time staff became aware of incident ~ who, what, when, where, why)*

ON 05/28/00   CLIENT CHECKED OUT AT 11:00 A.M. FOR CHURCH ,AND HIS DUE TIME WAS 1:00 P. M. CLIENT CALLED SAYING HE WAS GOING TO BE LATE .BECAUSE HE WAS HAVING PROBLEMS WITH HIS GIRLFRIEND .CLIENT WAS ADVISED .BY( STAFF) ADRIANA SANCHEZ TO COME BACK TO C.C.C., AND TO HANDEL HIS PERSONAL PROBLEMS SOME OTHER DAY .STAFF WAITED AND CLIENT DID NOT SHOW UP. STAFF CALLED MR. GARCIA  (DIRECTOR)AT 4:00 P.M. HE ADVISED TO MAKE AN ESCAPE CHECKLIST. STAFF CALLED CLIENTS PASS SITE LOCATION HIS BROTHER RUBEN PATLAN ANSWERED BUT GAVE STAFF NO INFORMATION ON CLIENT. STAFF THEN CALL , B.M.C HOSPITAL AND BROWNSVILLE P.D. NO ONE WAS REGISTERED UNDER THE NAME OF THE CLIENT. *Client arrived at 8:15. A.C.*



| 12. Signature of Reporting Employee  *A.C.* | 13. Name and Title *(Printed)* ADRIAN SANCHEZ (PROGRAM MONITOR) | a. Date and Time  5/28/00 7:10 P.M. |
|---|---|---|

| 14. Incident Report Delivered to Inmate by | 15. Date Delivered 5/28/00 | 16. Time Delivered 8:17 p.m |
|---|---|---|

**U. S. DEPARTMENT OF JUSTICE**
Federal Bureau of Prisons

**NOTICE OF CENTER**
**DISCIPLINE COMMITTEE HEARING (CCC's)**

| DATE 5/30/00 | FACILITY Reality House, Inc., 405 E. Washington Street, Brownsville, Texas 78520 |
|---|---|
| TO Hermenegildo Fatlon | REGISTER NUMBER 71880-079 |

ALLEGED VIOLATION(S)
Unexcused Absence

| DATE OF OFFENSE 5/28/00 | CODE NUMBER 310 |
|---|---|

*You are being referred to the Center Discipline Committee for the above charge(s).*

The hearing will be held on: 05/31/00 . at 10:00 . (A.M./P.M.)

at the following location: Contract Center Facility, Reality House, Inc.

*You are entitled to have a staff member represent you at the hearing.  Please indicate below whether you desire to have a staff representative, and if so, his or her name.*
*(Cannot be reporting, investigating, or CDC member)*

Inmate's initials _____ ☐ I (do) wish to have a staff representative.

Inmate's initials _____ ☐ I (do not) wish to have a staff representative.

*You will also have the right to call witnesses at the hearing and to present documentary evidence in your behalf, provided calling your witnesses will not jeopardize center safety.  Names of witnesses you wish to call should be listed below.  Inmate's initials _____: Briefly state what each proposed witness would be able to testify to:*

NAME: _____ , CAN TESTIFY TO: _____

NAME: _____ , CAN TESTIFY TO: _____

NAME: _____ , CAN TESTIFY TO: _____

NAME: _____ , CAN TESTIFY TO: _____

CONTINUED ON REVERSE

USP LVN                        Previous editions not usable                        BP-303(73)
                                                                                     MARCH 1991

Case 1:00-mc-00041   Document 48   Filed in TXSD on 10/09/2001   Page 34 of 55

## NOTICE OF CENTER DISCIPLINE COMMITTEE HEARING

The Chairman of the Center Discipline Committee will call those witnesses (Staff or inmate) who are reasonably available, and who are determined by him to be necessary for an appreciation of the circumstances surrounding the charge(s). Repetitive witnesses need not be called. Unavailable witnesses may be asked to submit written statements.

| *Date, sign, and return this form to the Chairman of the Center Discipline Committee.* | | |
|---|---|---|
| Date<br>05/30/00 | SIGNATURE/REG. NO. | |
| *Notice of hearing given to resident on* | DATE<br>05/30/00 | EMPLOYEE SIGNATURE<br>By |

**U. S. DEPARTMENT OF JUSTICE**
Federal Bureau of Prisons

# CENTER DISCIPLINE COMMITTEE REPORT (CCC's)

| NAME OF RESIDENT | REGISTER NUMBER | HEARING DATE |
|---|---|---|
| Patlan, Hermenegildo | 76880-079 | 6/1/00 |
| Date of Incident | Date of Incident Report | Number of Prohibited Acts |
| 5/28/00 | 5/28/00 | 310 |

Summary of Charge(s)

*Unexcused Absence*

**I. NOTICE OF CHARGE(S)**

——                          (Date)                          (Typed Name/Signature CHO)

A. Advance written notice of charges *(copy of incident report)* was given to resident on
*Manuel Gaon's Case Manager*

B. The CDC Hearing was held on *June 1, 2000 9:30 a.m.*

C. The resident was advised of his rights before this CDC by *Manuel Gaona, Case Manager* and a copy of the advisement of rights form is attached.

## II. STAFF REPRESENTATION

A. Resident waived right to staff representative _____ No

B. Resident requested staff representative and None appeared.   **None requested**

C. Requested staff representative declined or could not appear but resident was advised of option to postpone hearing

to obtain another staff representative with the result that

## III. PRESENTATION OF EVIDENCE

A. Resident has been advised of his right to present a statement or to remain silent, to present documents, including Written statements of unavailable witnesses, and for relevant and material witnesses to appear in his behalf at the hearing _____

B. Summary of Resident Statement:
*I had a fight with my girlfried and got drunk. I know I lost control, due to the alcohol I drank.*

C. Witnesses:

1. The resident requested no witnesses.  **None requested**

2. The following persons were called as witnesses at this hearing and appeared:

_____

3. A summary of testimony of each is attached. _____

CONTINUED

CIMPDF - www.texis.com

C. *(Continued)*

    4. The following persons requested were not called for the reason(s) given:   **_None were requested_**

    5. Unavailable witnesses were requested to submit written statements and those statements received were considered _None_

D. Documentary Evidence: In addition to the Incident Report and Investigation, the Committee considered the following documents: **_Sign out sheet indicating he signed out to Church and did not return at the designated time._**

E. Confidential information was considered by the CDC and not provided to resident: _None_

---

### IV. FINDINGS OF THE COMMITTEE

    ❑ A. The act was committed as charged.

    ❑ B. The following act was committed: _None_

    ❑ C. No prohibited act was committed: Expunge according to your Statement of Work.

---

### V. SPECIFIC EVIDENCE RELIED ON TO SUPPORT FINDINGS

*He continued to absent from the facility till 8:15 p.m.*

---

### VI. SANCTION RECOMMENDATION

*I recommend he be returned to custody for the remainder of his time and forfeiture of 50% of his good time.*

---

### VII. REASON FOR SANCTION RECOMMENDATION

*To deter other clients from this type of behavior. Mr. Patlan needs more time in close custody to reflect on his actions.*

---

### VIII. APPEAL RIGHTS

The resident has been advised of the findings, specific evidence relied on, action and reasons for the action. The inmate has been advised of his right to appeal by letter within 30 days of the imposition of the sanction to the Regional Director. A copy of this report has been given to the resident.

---

### IX. DISCIPLINE COMMITTEE

| Chairperson<br>Maria H. Mancha   Asst. Director | Member | Member |
|---|---|---|

---

### X. ACTION BY CCM

Disallow 13 days Good Conduct Time
TRANSFER to A Secure Facility

Good conduct time disallowed as this was the 2nd moderate Report in the Anniversary period.

    6/27/01
    Date

Benjamin Tousely  CCM    RL Stotter  DHO
(Typed Name/Signature - CCM)

## DECLARATION

My name is Maria Hortencia Mancha.  I am over 18 years of age, of sound mind, capable of making this Declaration, and have personal knowledge of the facts stated herein.

I am employed by the Reality House Community Corrections Center and was so employed, as the Assistant Director, during the period of time relevant to this lawsuit. I am now the Director of the Center.

On May 28, 2000, inmate Hermenegildo Patlan failed to return after being released to attend church. Mr. Patlan left the Center at 11:00 a.m. to attend church and was scheduled to return at 1:00 p.m.  At 1:15 a.m. Mr. Patlan called the Center and said he was going to be late.  He was told to return to the Center immediately, but he failed to do so.  Staff members attempted to locate Mr. Patlan, but could not. He finally returned at 8:15 p.m.

When Mr. Patlan returned to the Center, he was obviously very intoxicated.  When asked to take a breathalyzer test, Mr. Patlan grabbed the equipment and threw it on the ground, breaking it.  His demeanor was so intimidating and abusive, the Brownsville Police were called.  One officer arrived shortly later, but he had to call for backup because he could not

DEFENDANT'S EXHIBIT B

control Mr. Patlan.   Only after pepper spray was used on Mr. Patlan were the officers able to control him and take him to a local jail. He was arrested for disorderly conduct and resisting arrest.

These events are reported in two Incident Reports and an Investigation Report submitted by Program Monitor Adrian Sanchez, Caseworker Juan Carlos Cruz, and Case Manager Manel Gaona, respectively.

I presided over the Center Discipline Committee (CDC) Hearing of this matter as Chairperson of the Committee.   The facts stated in the CDC Report, a copy of which is attached to this affidavit, are true and correct.

The CDC Hearing was held on June 1, 2000. At the hearing, Manuel Gaona advised Mr. Patlan of his right to remain silent, to present documents including written statements of unavailable witnesses, and for relevant and material witnesses to appear in his behalf. Mr. Patlan did not request any witnesses or present any documentary evidence.   Further, he did not request a staff representative.   Rather, he simply admitted that he had a fight with his girlfriend and got drunk, then lost control. Based on the evidence submitted to me, I determined that Mr. Patlan failed to return to the facility until 8:15 p.m.—well after the

time at which he was due. I recommended that Mr. Patlan return to custody and forfeit 50% of his good time.

Mr. Patlan was advised of his right to appeal, as evidenced by his initials on the form.

The CDC Report was transmitted to Benjamin Tousely, the Community Corrections Manager, who decided to disallow thirteen days good conduct time and transfer Mr. Patlan to a secure facility.

The Reality House Community Correction Center is merely a location of Reality House, Inc., a subsidiary of Correctional Systems, Inc. Reality House Community Corrections Center is not a corporate entity, does not have authority or capacity to sue or be sued, and has no legal existence.

I declare, under penalty of perjury that the foregoing is true and correct. Executed on October ___5___, 2001.


MARÍA HORTENCIA MANCHA

SEP-27-2001 THU 03:49 PM WILLETTE & GUERRA      FAX NO. 956 5411893      P. 07

BP-S285 INCIDENT REPORT (CCC's) CD FRM
MAR 94

U. S. DEPARTMENT OF JUSTICE                         FEDERAL BUREAU OF PRISONS

| PART I – INCIDENT | | | |
|---|---|---|---|
| 1. Name of Center Reality House, Inc. 405 E. Washington St., Brownsville, Texas 78520 | | | |
| 2. Name of Inmate PATLAN, HERMENEGILDO | 3. Register Number 76880-079 | 4. Date of Incident 05/28/00 | 5. Time 20:15 HRS |
| 6. Place of Incident REALITY HOUSE INC. | 7. Assignment | | 8. Quarters |
| 9. Incident UNEXCUSE ABSENCE | 10. Code 310 | | |

11. DESCRIPTION OF INCIDENT *(Date and time staff became aware of incident = who, what, when, where, why)*

*CLIENT PATLAN SIGN-OUT AT 11:00 HRS FOR CHURCH AND HIS DUE TIME WAS 13:00 HRS. CLIENT CALLED AT 13:15 HRS STATING HE WAS RUNNING LATE. CLIENT REPORTED BACK TO C.C.C. AT 20:15 HRS CLIENT HAD NO PERMISSION AND NO EXCUSE TO ARRIVE TO THE CENTER 7 HRS & 15 MIN LATE.*

| 12. Signature of Reporting Employee | 13. Name and Title *(Printed)* JUAN C. CRUZ (CASEWORKER) | a. Date and Time 05/28/00 21:05 HRS |
|---|---|---|
| 14. Incident Report Delivered to Inmate by | 15. Date Delivered | 16. Time Delivered |

## Part II - Investigation

---

17. Inmate's Statement and Attitude:

Inmate was advised of his rights to remain silent. Inmate mentioned that on 5/28 he broke up with his girlfriend. He was all confused and he lost his mind. He thought of drinking one or two beers. instead he end up drinking 9 beers. He was told that he had broke one of the breatherlyzer. He responded by saying I don't remember.

---

18. Other Facts About the Incident:

Inmate did admitted that he drank 9 bears. He looked remorse about what he did. He mentioned that he already has a job and wants to returned to the program. He is willing to work his 40 hours and spend his weekend here.

---

19. Investigator's Comments and Conclusions:

Client knew that he was on the alcohol program and was to stay away from alcohol. He was also attending A.A. classes twice a week. Client is a heavy drinker and once he starts drinking he can not stop. Inmate did wrong and he has to pay for his mistakes.

---

20. Action Recommended:

I recommend this incident report goes to C.D.C. for disciplinary action.

---

| Printed Name/Signature | Title | Date |
|---|---|---|
| *(signature)* | CASEMANAGER | 05-30-00 |

Case 1:00-mc-00041    Document 48    Filed in TXSD on 10/09/2001    Page 42 of 55

**U. S. DEPARTMENT OF JUSTICE**
Federal Bureau of Prisons

## CENTER DISCIPLINE COMMITTEE REPORT (CCC's)

| NAME OF RESIDENT | REGISTER NUMBER | HEARING DATE |
|---|---|---|
| *Patlan, Hermenegildo* | *76880-079* | *6/1/00* |
| Date of Incident | Date of Incident Report | Number of Prohibited Acts |
| *5/28/00* | *5/28/00* | *310* |

Summary of Charge(s)        *Unexcused Absence*

I. NOTICE OF CHARGE(S)

___                      (Date)                    (Typed Name/Signature CHO)

A. Advance written notice of charges (*copy of incident report*) was given to resident on
   *Manuel Gaona Case Manager*

B. The CDC Hearing was held on *June 1, 2000 9:30 a.m.*

C. The resident was advised of his rights before this CDC by *Manuel Gaona, Case Manager* and a copy of the
advisement of rights form is attached.

### II. STAFF REPRESENTATION

A. Resident waived right to staff representative _____No

B. Resident requested staff representative and None appeared.   **None requested**

C. Requested staff representative declined or could not appear but resident was advised of option to postpone
hearing
   to obtain another staff representative with the result that

### III. PRESENTATION OF EVIDENCE

A. Resident has been advised of his right to present a statement or to remain silent, to present documents, including
   Written statements of unavailable witnesses, and for relevant and material witnesses to appear in his behalf at the
   hearing _____.

B. Summary of Resident Statement:
   *I had a fight with my girlfried and got drunk. I know I lost control, due to the alcohol I drank.*

C. Witnesses:
   1. The resident requested no witnesses.  **None requested**
   2. The following persons were called as witnesses at this hearing and appeared:

   _____

   3. A summary of testimony of each is attached. _____

CONTINUED                                                    BP-208(73)MARCH 1991 (Reproduction)

CMUPDF - www.texiw.com

C. (Continued)

4. The following persons requested were not called for the reason(s) given:  __None were requested__

5. Unavailable witnesses were requested to submit written statements and those statements received were considered __None__

D. Documentary Evidence: In addition to the Incident Report and Investigation, the Committee considered the following documents: __Sign out sheet indicating he signed out to Church and did not return at the designated time.__

E. Confidential information was considered by the CDC and not provided to resident: __None__

## IV.  FINDINGS OF THE COMMITTEE

☐ A. The act was committed as charged.

☐ B. The following act was committed: __None__

☐ C. No prohibited act was committed: Expunge according to your Statement of Work.

## V.  SPECIFIC EVIDENCE RELIED ON TO SUPPORT FINDINGS

*He continued to absent from the facility till 8:15 p.m.*

## VI.  SANCTION RECOMMENDATION

*I recommend he be returned to custody for the remainder of his time and  forfeiture of 50% of his good time.*

## VII.  REASON FOR SANCTION RECOMMENDATION

*To deter other clients from this type of behavior.  Mr. Patlan needs more time in close custody to reflect on his actions.*

## VIII.  APPEAL RIGHTS:

The resident has been advised of the findings, specific evidence relied on, action and reasons for the action.  The inmate has been advised of his right to appeal by letter within 10 days of the imposition of the sanction to the Regional Director.  A copy of this report has been given to the resident.

## IX.  DISCIPLINE COMMITTEE

| Chairperson Maria H. Mancha  Asst. Director | Member | Member |
|---|---|---|

## X.  ACTION BY CCM

Disallow 13 days Good Conduct Time
TRANSFER to A Secure Facility

Good conduct time disallowed as this was the 2nd moderate Report in the Anniversary period.

6/27/01
Date

Benjamin Tousely  CCM   RL Stoffer   DHO
(Typed Name/Signature - CCM)

# DECLARATION

My name is Manuel Gaona.   I am over 18 years of age, of sound mind, capable of making this Declaration, and have personal knowledge of the facts stated herein.

I am employed by the Reality House Community Corrections Center and was so employed, as a Case Manager, during the period of time relevant to this lawsuit. I am currently the Assistant Director of the Center.

On May 30, 2000, I investigated Incident Reports submitted by Caseworker Juan Carlos Cruz and Program Monitor Adrian Sanchez regarding a May 28, 2000 incident.   The reports indicated that inmate Hermenegildo Patlan was released from the Center at 11:00 a.m. on May 28, 2000, and was supposed to return at 1:00 p.m. that day.   Failing to return as directed is a serious offense that can result in criminal charges, is considered an escape, and is a violation of the Center's rules and regulations.   Mr. Patlan reportedly called the Center at 1:15 p.m. and stated he would be late.   He was told to return to the Center immediately.   Mr. Patlan did not return to the Center until 8:15 p.m. on May 28th, and he did so in an intoxicated condition.   Intoxication and disorderly conduct are serious offenses that can result in criminal charges, and are a



violation of the Center's rules and regulations. He broke the Center's breathalyzer equipment. He was so intoxicated and disorderly, he was arrested by officers of the Brownsville Police Department.

I spoke with Mr. Patlan on May 30, 2000 as part of the investigation. I informed him of his right to remain silent. He nonetheless told me that he broke up with his girlfriend on May 28, 2000, and that he was confused and "lost his mind." He did not deny that he failed to return to the Center at 1:00 p.m. on May 28, 2000, or that he had any sort of permission to be gone until 8:15 p.m. He said he thought of drinking one to two beers, but ended up drinking nine beers. He did not remember breaking the breathalyzer equipment.

Mr. Patlan was undergoing alcohol treatment at the time of the incident, and knew he had a problem with alcohol.

Based on the foregoing facts, I recommended that the Incident Report be forwarded to the Center Discipline Committee (CDC) for disciplinary action. I prepared a "Notice of Center Discipline Committee Hearing" and gave it to Mr. Patlan on May 30, 2000, along with copies of the Incident Reports. The notice informed Mr. Patlan of his rights at the hearing, including his right to a staff representative, and his right to call witnesses and present documentary evidence.

Case 1:00-mc-00041   Document 48   Filed in TXSD on 10/09/2001   Page 46 of 55

The CDC Hearing was held on June 1, 2000. At the hearing, I advised Mr. Patlan of his right to remain silent, to present documents including written statements of unavailable witnesses, and for relevant and material witnesses to appear in his behalf. Mr. Patlan did not request any witnesses, present any documentary evidence, or request a staff representative. Rather, he simply admitted that he had a fight with his girlfriend and got drunk, then lost control.

My statements at the hearing were entirely consistent with my Investigation Report, and my Investigation Report was entirely consistent with what I learned in my investigation.

A true and correct copy of my Investigation Report is attached hereto. All of the statements in the report are true and correct.

I declare, under penalty of perjury that the foregoing is true and correct. Executed on October __5__, 2001.

_____
MANUEL GAONA

Case 1:00-mc-00041   Document 48   Filed in TXSD on 10/09/2001   Page 47 of 55

## Part II - Investigation

---

17. Inmate's Statement and Attitude:

Inmate was advised of his rights to remain silent.  Inmate mentioned that on 5/28 he broke up with his girlfriend.  He was all confused and he lost his mind.  He thought of drinking one or two beers, instead he end up drinking 9 beers. He was told that he had broke one of the breatherlyzer. He responded by saying I don't remember.

---

18. Other Facts About the Incident:

Inmate did admitted that he drank 9 beers.  He looked remorse about what he did.  He mentioned that he already has a job and wants to returned to the program.  He is willing to work his 40 hours and spend his weekend here.

---

19. Investigator's Comments and Conclusions:

Client knew that he was on the alcohol program and was to stay away from alcohol.  He was also attending A.A. classes twice a week.  Client is a heavy drinker and once he starts drinking he can not stop.  Inmate did wrong and he has to pay for his mistakes.

---

20. Action Recommended:

I recommend this incident report goes to C.D.C. for disciplinary action.

---

| Printed Name/Signature | Title | Date |
|---|---|---|
|  | CASEMANAGER | 05-30-00 |

# DECLARATION

My name is Juan Carlos Cruz. I am over 18 years of age, of sound mind, capable of making this Declaration, and have personal knowledge of the facts stated herein.

I am employed by the Reality House Community Corrections Center and was so employed, as a caseworker, during the period of time relevant to this lawsuit. On May 28, 2000, I was present at the Reality House Community Corrections Center when inmate Hermenegildo Patlan failed to return after being released to attend church.

Mr. Patlan left the Center at 11:00 a.m. to attend church and was scheduled to return at 1:00 p.m. At 1:15 a.m. Mr. Patlan called the Center and said he was going to be late. He was told to return to the Center immediately, but he failed to do so. Staff members attempted to locate Mr. Patlan, but could not. He finally returned at 8:15 p.m.

These events are reported in the Incident Reports submitted by me and Program Monitor Adrian Sanchez. I personally delivered Ms. Sanchez's report to Mr. Patlan at 8:17 p.m., as reflected on the Incident Report form. The facts stated in both reports, copies of which are attached to this affidavit, are true and correct.

FROM :

OCT-05-2001 10:44 FROM:FD&V, LLP

FAX NO. :

8707726829

Oct. 05 2001 12:45PM  P1

TO:9038818829        P.018/028

When Mr. Patlan returned to the Center, he was obviously very intoxicated.  When asked to take a breathalyzer test, Mr. Patlan grabbed the equipment and threw it on the ground, breaking it.  His demeanor was so intimidating and abusive, the Brownsville Police were called.  One officer arrived shortly later, but he had to call for backup because he could not control Mr. Patlan.  Only after pepper spray was used on Mr. Patlan were the officers able to control him and take him to a local jail. He was arrested for disorderly conduct and resisting arrest.

I did not participate in any disciplinary hearing regarding the incident.

I declare, under penalty of perjury that the foregoing is true and correct. Executed on October __5__ , 2001.

JUAN CARLOS CRUZ

BP-S205 INCIDENT REPORT (CCC's) CD FRM
MAR 94

**U. S. DEPARTMENT OF JUSTICE**                    **FEDERAL BUREAU OF PRISONS**

| PART I - INCIDENT |
|---|

1. Name of Center

**Reality House, Inc. 405 E. Washington St., Brownsville, Texas 78520**

| 2. Name of Inmate | 3. Register Number | 4. Date of Incident | 5. Time |
|---|---|---|---|
| HERMENEGILDO, PATLAN | 76880-079 | 5/28/00 | 1:00 P.M |

| 6. Place of Incident | 7. Assignment | 8. Quarters |
|---|---|---|
| CHURCH | | |

| 9. Incident | 10. Code |
|---|---|
| ESCAPE ,BEING IN AN UNAUTHORIZED AREA | 200,316 |

11. DESCRIPTION OF INCIDENT *(Date and time staff became aware of incident = who, what, when, where, why)*

ON 05/28/00   CLIENT CHECKED OUT AT 11:00 A.M. FOR CHURCH ,AND HIS DUE TIME WAS 1:00 P. M. CLIENT CALLED SAYING HE WAS GOING TO BE LATE ,BECAUSE HE WAS HAVING PROBLEMS WITH HIS GIRLFRIEND . CLIENT WAS ADVISED .BY( STAFF) ADRIANA SANCHEZ TO COME BACK TO C.C.C., AND TO HANDEL HIS PERSONAL PROBLEMS SOME OTHER DAY .STAFF WAITED AND CLIENT DID NOT SHOW UP. STAFF CALLED MR. GARCIA  (DIRECTOR)AT 4:00 P.M. HE  ADVISED TO MAKE AN ESCAPE CHECKLIST. STAFF CALLED CLIENTS PASS SITE LOCATION HIS BROTHER RUBEN PATLAN ANSWERED BUT GAVE STAFF NO INFORMATION ON CLIENT. STAFF THEN CALL , B.M.C HOSPITAL AND BROWNSVILLE P.D. NO ONE WAS REGISTERED UNDER THE NAME OF THE CLIENT. Client arrived at 8:15. J.C.



| 12. Signature of Reporting Employee | 13. Name and Title *(Printed)* ADRIAN SANCHEZ (PROGRAM MONITOR) | a. Date and Time 5/28/00 7:10 P.M. |
|---|---|---|
| *J.C.C.* | | |

| 14. Incident Report Delivered to Inmate by | 15. Date Delivered 5/28/00 | 16. Time Delivered 8:17 p.m |
|---|---|---|

BP-S285 INCIDENT REPORT (CCC's) CD FRM
MAR 94

## U. S. DEPARTMENT OF JUSTICE                     FEDERAL BUREAU OF PRISONS

| PART I - INCIDENT |
|---|

| 1. Name of Center |
|---|
| Reality House, Inc. 405 E. Washington St., Brownsville, Texas 78520 |

| 2. Name of Inmate | 3. Register Number | 4. Date of Incident | 5. Time |
|---|---|---|---|
| PATLAN. HERMENECILDO | 76880-079 | 05/28/00 | 20:15 HRS |

| 6. Place of Incident | 7. Assignment | 8. Quarters |
|---|---|---|
| REALITY HOUSE INC. | | |

| 9. Incident | 10. Code |
|---|---|
| UNEXCUSE ABSENCE | 310 |

| 11. DESCRIPTION OF INCIDENT *(Date and time staff became aware of incident = who, what, when, where, why)* |
|---|
| CLIENT PATLAN SIGN-OUT AT 11:00 HRS FOR CHURCH AND HIS DUE TIME WAS 13:00 HRS. CLIENT CALLED AT 13:15 HRS STATING HE WAS RUNNING LATE. CLIENT REPORTED BACK TO C.C.C. AT 20:15 HRS CLIENT HAD NO PERMISSION AND NO EXCUSE TO ARRIVE TO THE CENTER 7 HRS & 15 MIN LATE. |

| 12. Signature of Reporting Employee | 13. Name and Title *(Printed)* | a. Date and Time |
|---|---|---|
| | JUAN C. CRUZ (CASEWORKER) | 05/28/00 21:05 HRS |

| 14. Incident Report Delivered to Inmate by | 15. Date Delivered | 16. Time Delivered |
|---|---|---|
| | | |

U. S. DEPARTMENT OF JUSTICE
Federal Bureau of Prisons

**NOTICE OF CENTER
DISCIPLINE COMMITTEE HEARING (CCC's)**

| DATE 5/30/00 | FACILITY Reality House, Inc., 405 E. Washington Street, Brownsville, Texas 78520 |
|---|---|
| TO Hermenegildo Patlan | REGISTER NUMBER 71880-079 |

ALLEGED VIOLATION(S)

Unexcused Absence

| DATE OF OFFENSE 5/28/00 | CODE NUMBER 310 |
|---|---|

*You are being referred to the Center Discipline Committee for the above charge(s).*

The hearing will be held on: 05/31/00 . at 10:00 - (A.M.)P.M.

at the following location: Contract Center Facility, Reality House, Inc.

*You are entitled to have a staff member represent you at the hearing.  Please indicate
below whether you desire to have a staff representative, and if so, his or her name.
(Cannot be reporting, investigating, or CDC member)*

        Inmate's initials _____ ☐ I (do) wish to have a staff representative.

        Inmate's initials _____ ☐ I (do not) wish to have a staff representative.

*You will also have the right to call witnesses at the hearing and to present documentary evidence in your behalf, provided
calling your witnesses will not jeopardize center safety.  Names of witnesses you wish to call should be listed below.  Inmate's
initials _____: Briefly state what each proposed witness would be able to testify to:*

NAME: _____, CAN TESTIFY TO: _____

NAME: _____, CAN TESTIFY TO: _____

NAME: _____, CAN TESTIFY TO: _____

NAME: _____, CAN TESTIFY TO: _____

CONTINUED ON REVERSE

USP LVN                    Previous editions not usable                    BP-309(73)
MARCH 1991

## NOTICE OF CENTER DISCIPLINE COMMITTEE HEARING

The Chairman of the Center Discipline Committee will call those witnesses (Staff or inmate) who are reasonably available, and who are determined by him to be necessary for an appreciation of the circumstances surrounding the charge(s). Repetitive witnesses need not be called. Unavailable witnesses may be asked to submit written statements.

| Date, sign, and return this form to the Chairman of the Center Discipline Committee. | | |
|---|---|---|
| Date<br>05/30/00 | SIGNATURE/REG. NO.<br>X | |
| Notice of hearing given to resident on | DATE<br>05/30/00 | EMPLOYEE SIGNATURE<br>By |

C2bPDF - www.fesiso.com

Case 1:00-mc-00041   Document 48   Filed in TXSD on 10/09/2001   Page 54 of 55

## DECLARATION

My name is Jose S. Garcia.  I am over 18 years of age, of sound mind, capable of making this Declaration, and have personal knowledge of the facts stated herein.

My name is Jose S. Garcia.  I am over 18 years of age, of sound mind, capable of making this affidavit, and have personal knowledge of the facts stated herein.  The facts stated herein are true and correct.

In May of 2000, I served as Director of the Reality House Community Corrections Center. On or about May 28, 2000, while attending my youngest son's graduation ceremony, I received a call from an employee of the Reality House.  The employee informed me that an inmate, Hermemegildo Patlan, had been released to attend church but did not return at the designated time.  Based on the information I received, I told the employee that the matter probably constituted an escape.  A short time later, the employee called back and told me that Mr. Patlan had returned to the facility but was drunk.  I instructed her to call the Community Corrections Manager in Houston, Texas for advice.  I did not receive any other calls regarding the matter and did not attend work the following day.  I had nothing to do

1



with the disciplinary hearing or any other matter concerning Mr. Patlan.

When I returned to work, Mr. Patlan was no longer in the facility.  I learned that the disciplinary hearing had been held, that the Brownville Police Department had been called, and that the regular procedures of the Reality House Community Corrections Center were followed with regard to the entire matter, and I had no reason to believe otherwise.

Mr. Patlan never communicated with me regarding this matter.

Further affiant sayeth not.

I declare, under penalty of perjury that the foregoing is true and correct. Executed on October 5, 2001.


_____
JOSE S. GARCIA

2